ASHFORD, *v.* STATE.

(In Banc. Oct. 7, 1940.)

[198 So. 35. No. 34196.]

**S. R. King**, of Durant, for appellant.

**W. D. Conn, Jr.**, Assistant Attorney-General, for appellee.

**Ethridge, J.**, delivered the opinion of the court.

J. C. Ashford, the appellant, was indicted at the March Term, 1940, of the circuit court of Attala County for the murder of Lillie Carter, and was placed on trial, convicted of the said offense, and sentenced to death, from which conviction he appeals here.

The appellant had been ceremonially married to Willie C. Hull, formerly Willie Knaves, but the said Willie had previously been married to a negro called Skeeter Hull, and had not obtained a divorce from him, he still being alive. Some three or four weeks before the killing, the appellant and Willie had separated and she had returned to her father's home.

On the evening of the killing, the appellant had gone to the home of Willie's father, Freeman Knaves, to see Willie C., his alleged wife, and, it appears from the evidence, the appellant had kicked the latch off the door after being refused admission to the home, and was talking to Willie C. when Freeman Knaves and his wife came up from town; whereupon Willie C. told her father, Freeman Knaves, that the appellant had kicked the latch off the door; whereupon Freeman Knaves went to the officers in the City of Kosciusko where they lived, and the officers came out to the premises of Freeman Knaves, but the appellant had left the house and they did not find him.

The officers returned to town, and about thirty minutes thereafter Freeman Knaves came up to his home, and just before he reached the house, he was hailed by the appellant to wait a minute. The appellant, according to the proof for the State, accused Freeman Knaves of getting the law on him, which Freeman appears to have denied. And thereupon the appellant said, "Yes you did," and then said, "Don't back up another step," and the shot was fired which killed Freeman Knaves. Appellant then shot into the house with the shotgun and the pistol, the shot going through the window shades of the house which appeared to have been down. The inmates of the house, the testimony shows, went to the back of the house, and the appellant then went to the rear of the house of Freeman Knaves and fired a shot through the window which struck Lillie Carter, a married woman related to the Knaves who was living in the home, and killed her.

It appears from the testimony of the appellant that he thought that Willie C., his wife, was carrying on and having relations with her former husband, Skeeter Hull, and he sought to introduce in evidence a letter from Skeeter Hull to Willie C. Ashford, or Hull, the woman who had married both Skeeter Hull and the appellant. The theory upon which the defendant sought to escape conviction of murder was that he was so wrought up about the conduct by Willie C. and her former husband, Skeeter Hull; that his reason was overthrown and that at most he could only be convicted of manslaughter.

The appellant, the night of the killing, left the premises and was not apprehended for some time thereafter, but when arrested he made a statement to the district attorney and the deputy sheriff about the circumstances attending the killing, which confession was at the time written down by the district attorney. On the trial of the case the defendant objected to the deputy sheriff testifying to the alleged confession on the ground that it was reduced to writing and that the writing was the best evidence of the confession, which objection was overruled,

but the writing was, on demand of the defendant to counsel, turned over to him and introduced. A confession both as testified to by the officer and by the written statement made to the district attorney showed substantially the details of the killing and were sufficient to sustain a conviction of murder if testified to on trial.

The defendant took the stand on the trial and testified that he was married to Willie C. in 1938, and that they separated in November, 1939, and that the separation was about two weeks prior to the killing. He further testified that Skeeter Hull was the former husband of his wife and that he started back going with her in November prior to the killing; that he was with her once or twice to his knowledge, and his wife left him and went to the home of her father, Freeman Knaves, and that he, the appellant, made several trips down there to get her to return; that he had a conversation with Freeman Knaves about Skeeter Hull going with his wife, and testified that Freeman Knaves told him that Skeeter had a job and was working and could give his daughter, appellant's wife, more money, and that he stated to Freeman that he didn't think that was treating him right; and that the night of the killing he went down there again and was standing at the door talking to her when the rest of them came from town, and all of them went into the house but Freeman Knaves, and that the appellant and Freeman were standing out there talking, and that Freeman told him to stand there until he came back, and never did tell him where he was going, and left, and went up the road, and that the appellant left and went home and got his gun, and came back down there.

"Q. What was your object in getting a gun? A. Well, I was just excited on the way he was treating me about it towards her and Skeeter, that was one reason I was getting it.

"Q. Why did you go down there that night armed with a pistol and shotgun? A. I went down there to catch Sug and Skeeter together.

"Q. Catch what? A. Catch Sug and Skeeter together.

"Q. What were you aiming to do if you caught them together? A. I was intending to kill them."

Further along in the appellant's testimony, he was asked:

"Q. How come you to separate, J. C.? A. On account of her and Skeeter.

"Q. What had she and Skeeter been doing until November 1st that you know of? A. Well, I knew he had been going with her.

"Q. Been going with her while she was living with you? A. Yes, sir.

"Q. Why did you do anything to Skeeter about it? A. I was waiting until I caught both of them dead to right."

The testimony fully sustains the case of murder, for the testimony of the defendant himself shows that he armed himself for the purpose of going down there with the hope of catching Skeeter and his wife together with the intent to kill them in such a contingency. There was no sufficient testimony to reduce the homicide from murder to manslaughter, even upon the defendant's own theory. The various instructions complained of contain no reversible error, either those given to the State or those refused to the defendant. It is unnecessary to set these various instructions out because the law upon this subject is well settled by prior decisions of this Court, and would only consume needless space to set out or comment upon the various instructions complained of.

We find no reversible error in the judgment of the Court as affirmed, and Thursday, November 14, 1940, is fixed as the day of execution.

Affirmed.